# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2023 CU 0089

*PMc by ZW*
*AHP by ZW*
*/W/*
*QM*

## CHRISTOPHER McWHORTER

### VERSUS

## KASSIE GILL

Judgment Rendered: **NOV 27 2023**

\* \* \* \* \*

Appealed from the
17th Judicial District Court
Parish of Lafourche, State of Louisiana
No. C-145424

The Honorable Kirk A. Vaughn, Judge Pro Tempore Presiding

\* \* \* \* \*

| | |
|---|---|
| Timothy Thriffiley<br>Belle Chasse, Louisiana | Attorney for Defendant/Appellant,<br>Kassie Gill |
| Joan M. Malbrough<br>Estelle E. Mahoney<br>Cheleste H. Gottschalk<br>Houma, Louisiana | Attorneys for Plaintiff/Appellee,<br>Christopher McWhorter |

\* \* \* \* \*

BEFORE: GUIDRY, C.J., McCLENDON, CHUTZ,
PENZATO, AND WOLFE, JJ.

*Chutz, J. Dissents and assigns reasons.*
*/W/*

**WOLFE, J.**

In this custody suit, the mother appeals a trial court judgment awarding the father shared custody of the minor child. For the reasons that follow, we reverse and remand for further proceedings.

## FACTS

Christopher McWhorter and Kassie Gill are the unmarried parents of SJM, born January 14, 2022. On August 15, 2022, Mr. McWhorter filed the instant suit in Lafourche Parish to establish filiation, custody, and child support of the minor child. In his petition, Mr. McWhorter alleged that he formally acknowledged the child and was listed as the father on the child's birth certificate, and further that he had exercised visitation with the child since his relationship with Ms. Gill ended in March. Mr. McWhorter requested joint custody of the child or, alternatively, shared custody exercised on an alternating fourteen-day basis to accommodate his work schedule. He asked that child support be set in accordance with Louisiana's child support guidelines, with Ms. Gill ordered to pay her proportionate share of the child's expenses, and that he be allowed to claim the tax dependency exemption for the child.

A hearing on Mr. McWhorter's petition was set for September 28, 2022. The hearing was first continued on motion of Ms. Gill, who represented that she lived in Plaquemines Parish and needed more time to prepare and retain counsel to represent her in Lafourche Parish. She additionally claimed that she was obligated to work in Monroe, Louisiana, during the week of the scheduled hearing. She indicated that she contacted "the opposing party/counsel" but did not indicate whether there was any objection to the requested continuance. The trial court granted the motion, and the hearing was re-set for October 25, 2022.

The October 25, 2022 hearing was then continued on motion of Mr. McWhorter, who represented that he would be out of state for work on the date of

2

the scheduled hearing. He indicated that Ms. Gill had been contacted and had no objection to the continuance. The trial court granted the motion and the hearing was re-set for November 29, 2022.

On the afternoon before the November 29, 2022 hearing, an attorney fax-filed a motion to enroll on behalf of Ms. Gill for the limited purpose of requesting a continuance and stay of the proceedings pending the outcome of a petition for protection from abuse that Ms. Gill filed in Plaquemines Parish. In the accompanying motion for continuance and stay, it was explained that a hearing on the petition for protection from abuse was scheduled for November 21, 2022, but continued to December 12, 2022, due to lack of service. Attached as an exhibit was a copy of the petition for protection from abuse filed by Ms. Gill, on behalf of herself and SJM, against Mr. McWhorter in Plaquemines Parish. Therein, Ms. Gill alleged abuse by Mr. McWhorter, including the failure to return the minor child at the agreed upon time and place, harassment, and threatening her and her unborn child with bodily harm. As supporting evidence, Ms. Gill appended a typewritten list of dates and alleged threats made by Mr. McWhorter. In the petition, Ms. Gill requested issuance of a temporary restraining order and an award of temporary custody of SJM; however, the attachment did not include any orders issued in connection with the petition.

On November 29, 2022, Mr. McWhorter and his attorney appeared in court for the scheduled hearing. Neither Ms. Gill nor the attorney who fax-filed the motions to enroll and for continuance were present. When the case was called, Mr. McWhorter's attorney explained that the previous day she received a fax from an attorney seeking a continuance of the hearing. Mr. McWhorter's attorney voiced her objection to the request, stating that the petition in this matter had been pending since August 15, that Mr. McWhorter had not been allowed any visitation with the child in the preceding month, and that she was ready to proceed.

3

The trial court acknowledged receiving "a phone call from the attorney who didn't even bother to come today – claiming that she wanted a continuance and that the lady, her client, was pregnant and was having some sort of transfusion or something [like] that." The trial court explained that the attorney was instructed to contact Mr. McWhorter's attorney. Recognizing that Mr. McWhorter's attorney obviously did not agree to a continuance, the trial court stated it was ready to proceed. The trial court observed, "they had to know these things were going on without contacting anyone until [the] last minute," which the trial court characterized as "inappropriate."

Mr. McWhorter then testified on his own behalf. He explained that he worked as an offshore tugboat captain and arranged his schedule to have custody of the child on an alternating fourteen-day schedule. According to Mr. McWhorter, he and Ms. Gill had shared custody of the child according to that schedule until Ms. Gill made unfounded allegations against him and filed for a protective order, after which he had not been allowed to see the child. Mr. McWhorter noted that Ms. Gill alleged instances of abuse during months he had custody of the child, but did not seek a protective order until November. Mr. McWhorter testified that he was the child's primary caregiver, explaining that when Ms. Gill traveled to Monroe to work as a nurse practitioner, she left the child with him or babysitters, some of whom were as young as sixteen years old. Mr. McWhorter confirmed that Ms. Gill was again pregnant and that he might be the unborn child's father.

During his testimony, Mr. McWhorter acknowledged that an order was issued in relation to the petition for protection from abuse that Ms. Gill filed in Plaquemines Parish. However, Mr. McWhorter affirmed that the Plaquemines Parish court was aware of the custody proceeding, as evidenced by the order stating that it would be superseded by any order rendered by a court in Lafourche Parish with jurisdiction over custody of the child.

4

At the conclusion of Mr. McWhorter's testimony, the trial court stated it had "a lot of questions, a lot of concerns" that it did not expect to have answered that day, noting "[i]t would've been nice to have both parties here." In response to questioning by the trial court, Mr. McWhorter indicated that DNA testing proved he was SJM's father and if he was proven to be the unborn baby's father, he was willing to raise it too. Mr. McWhorter denied any substance abuse problems and, when the trial court asked if he had "[a]ny type of criminal record," he answered "[n]ot really." After a colloquy with Mr. McWhorter about how custody of the child could be transferred between the parents without Mr. McWhorter being arrested for violating the protective order issued in Plaquemines Parish, the trial court granted Mr. McWhorter's request for shared custody. The trial court explained that it based its ruling on Mr. McWhorter having cared for the child "so much in the past" and the fact that it saw no prohibitions to a shared custody arrangement, noting that shared custody is presumed to be in the best interest of the child unless a party can overcome that presumption. The trial court cautioned Mr. McWhorter to "be careful," telling him, "you're the one that's important in this process, not me." After Mr. McWhorter thanked the trial court for its ruling and advice, the trial court further explained that it knew how it would rule before questioning Mr. McWhorter, but wanted to make sure it "heard the right answers." When Mr. McWhorter described bonding with the father of two of Ms. Gill's other children, having earlier described the custody dispute between Ms. Gill and the children's father, the trial court commented that "shared abuse sometimes creates close friendships." At the conclusion of the hearing, the trial court thanked Mr. McWhorter for "stepping up and caring for [his] daughter," noting that there were too many absentee fathers.

In conformity with its oral ruling, the trial court signed a judgment on December 1, 2022, that awarded Ms. Gill and Mr. McWhorter shared custody of SJM on an alternating fourteen-day schedule. The judgment decreed that the

5

custody schedule would begin immediately, with Mr. McWhorter having custody of the child until December 8, 2022, when his work schedule changed, and Ms. Gill having the child December 8, 2022, through December 22, 2022, then Mr. McWhorter having custody December 22, 2022, through January 5, 2023, and custody thereafter alternating every fourteen days. The judgment specifically provided that it superseded the Plaquemines Parish protective order.

The day after the judgment was signed, the same attorney who filed the prior motion to enroll on behalf of Ms. Gill filed a second motion to enroll as counsel for Ms. Gill for the limited purpose of filing an accompanying motion to continue and stay the proceedings pending the outcome of the Petition for Protection pending in Plaquemines Parish. The trial court denied the motions as moot.

Ms. Gill then filed a motion for new trial, in which she stated that when she requested a continuance and stay of these proceedings, she believed Mr. McWhorter was offshore and unable to move forward with the hearing. She stated that she understood that the motion for continuance and stay filed by the attorney on her behalf were not considered due to untimely payment of filing fees. Ms. Gill represented that she was 34 weeks pregnant with Mr. McWhorter's child and, on the date of the custody hearing, received a blood transfusion and was put on bed rest, which rendered it "medically impossible" for her to appear at the hearing and put on evidence. She further asserted that the trial court's judgment awarding shared custody was contrary to the law and evidence, alleging instances of abuse by Mr. McWhorter that formed the basis of the protective order she obtained in Plaquemines Parish. The trial court denied the motion without a hearing, noting that "[t]he Judge in Plaquemines provided for the contingency of a custody ruling in Lafourche Parish regarding custody. Mover chose not to appear herein despite a continuance not being granted."

6

Ms. Gill now appeals the trial court's December 1, 2022 custody judgment and the denial of her motion for new trial.

## DISCUSSION

Ms. Gill contends that the trial court should have granted her a continuance of the custody hearing as it had information that she was unable to attend because she was undergoing a medical procedure related to her pregnancy. Ms. Gill acknowledges that the information regarding her medical condition was not set forth in the motion for continuance and stay of the proceedings, but contends that the trial court was aware of it, as evidenced by the trial court's comments regarding the phone call it received from the attorney who prepared the motion. Additionally, she attached evidence of such to her motion for new trial, which she contends should have been granted on that basis and because she had evidence of domestic abuse by Mr. McWhorter.

The trial court may grant a continuance on peremptory or discretionary grounds. La. Code Civ. P. arts. 1601 and 1602. There are only two peremptory grounds: (1) the party seeking the continuance, despite due diligence, has been unable to obtain material evidence; or (2) a material witness is absent without the contrivance of the party applying for the continuance. La. Code Civ. P. art. 1602. Absent peremptory grounds, a continuance rests within the sound discretion of the trial court. **Matter of Succession of Patin**, 2021-1461 (La. App. 1st Cir. 11/4/22), 355 So.3d 45, 48, writ denied, 2023-00011 (La. 3/28/23), 358 So.3d 513. La. Code Civ. P. art. 1601 provides for a continuance "if there is good ground therefor." The trial court must consider the particular facts of a case when deciding whether to grant or deny a continuance. The trial court should consider the diligence and good faith of the party seeking the continuance and other reasonable grounds. The trial court may also weigh the condition of the court docket, fairness to the parties and other litigants before the court, and the need for orderly and prompt administration of

7

justice. The trial court has great discretion in granting or denying a continuance under La. Code Civ. P. art. 1601, and its ruling should not be disturbed on appeal in the absence of a clear abuse of discretion. **Matter of Succession of Patin**, 355 So.3d at 48-49.

A new trial shall be granted upon contradictory motion of any party when the judgment appears clearly contrary to the law and the evidence, or when the party has discovered new evidence that she could not have obtained before or during trial. See La. Code Civ. P. art. 1972. Additionally, a new trial may be granted in any case if there are good grounds therefor. See La. Code Civ. P. art. 1973. A new trial should be ordered when the trial court, exercising its discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice. The denial of a motion for new trial, whether on peremptory or discretionary grounds, should not be reversed unless there has been an abuse of the trial court's discretion. **Moore v. Prater**, 2021-1430 (La. App. 1st Cir. 6/3/22), 342 So.3d 994, 1002-03.

We recognize that a trial court has wide discretion in the control of its docket. **Rover Group, Inc. v. Clark**, 2021-1365 (La. App. 1st Cir. 4/8/22), 341 So.3d 842, 846, writ denied, 2022-00766 (La. 9/20/22), 346 So.3d 287. However, the paramount consideration in all child custody disputes is the best interest of the child. See La. Civ. Code art. 131; **Evans v. Lungrin**, 97-0541 (La. 2/6/98), 708 So.2d 731, 740. The trial court sits as a sort of fiduciary on behalf of the child and must actively pursue that course of conduct that will be of the greatest benefit to the child. **Turner v. Turner**, 455 So.2d 1374, 1379 (La. 1984). Every child custody case must be viewed in light of its own particular set of facts and circumstances. **Underwood v. Underwood**, 2021-0277 (La. App. 1st Cir. 10/21/21), 332 So.3d 128, 139.

The record in this case establishes that Ms. Gill has made allegations of abuse against Mr. McWhorter in another court, which raise questions as to whether an

8

award of shared custody is in SJM's best interest.[1] By proceeding with the custody hearing in Ms. Gill's absence, the trial court was denied the opportunity to adequately consider the truth of those allegations and assess the best interest of the child. In fact, the trial court alluded to this when, after hearing Mr. McWhorter's testimony, it stated it would have been nice to have both parties present as it had many unanswered questions.

Ms. Gill has explained that her absence from the custody hearing was due to complications with her advanced pregnancy. Although the motion to continue presented to the trial court was not based on the pregnancy or the related complications, the trial court acknowledged that it had been informed that Ms. Gill was receiving a transfusion. Further, Mr. McWhorter testified that he was likely the unborn child's father and expressed his concern over Ms. Gill obtaining proper medical care during the pregnancy.

Considering the unique circumstances presented in this matter, we find that the trial court abused its discretion in proceeding with the custody hearing in Ms. Gill's absence and rendering a judgment awarding shared custody of the child. At the very least, a new trial is warranted so that all relevant evidence can be presented and the trial court can make an informed decision regarding SJM's best interest.

## CONCLUSION

The trial court's judgment denying Kassie Gill's motion for new trial is reversed and this matter is remanded for a new trial. Costs of this appeal are assessed to Christopher McWhorter.

**REVERSED AND REMANDED.**

---

[1]     These allegations appear in the petition for protection from abuse that was filed with her motion to continue. As Mr. McWhorter points out on appeal, Ms. Gill did not answer his petition or file any substantive pleadings in this matter that directly allege abuse.

9

CHRISTOPHER McWHORTER

VERSUS

CASSIE GILL

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

NO. 2023 CU 0089

W/RC

CHUTZ, J., dissenting.

I disagree with the majority's conclusion that the trial court abused its discretion either in denying Ms. Gill's motion for continuance or her motion for new trial. Ms. Gill alleges it was "medically impossible" for her to appear at the custody hearing because she was scheduled to undergo a transfusion related to her pregnancy on the date of the hearing. In her motion to continue, however, Ms. Gill made no mention of a scheduled medical procedure. Instead, she requested a continuance solely on the basis that no ruling had been made in her pending action for a protective order against Mr. McWhorter in Plaquemines Parish. As the trial court observed, it was not until the "last minute" that Ms. Gill's attorney contacted the trial court by phone and advised that Ms. Gill wanted a continuance because she was undergoing a medical procedure on the date of the custody hearing.

Even if the medical necessity of the procedure is conceded, the record is devoid of any evidence showing the procedure was necessitated by a medical emergency that prevented Ms. Gill from timely requesting a continuance on medical grounds. Although it is clear the procedure was scheduled in advance, the record does not establish whether the procedure was scheduled before or after the date of the custody hearing was set. Ms. Gill also failed to present any evidence that she lacked control over the scheduling of the procedure or that she could not have undergone the procedure on a different day without risk to her health or the health of the baby.

Absent peremptory causes, which have not been established in this case, a continuance rests within the trial court's sound discretion. The trial court's ruling on whether or not to grant a continuance should not be disturbed in the absence of a clear abuse of discretion. Appellate courts interfere in such matters only with reluctance and in extreme cases. *Booth v. Amberg*, 07-2560 (La. App. 1st Cir. 9/19/08), 2008 WL 4287562, *4 (unpublished).

In this case, Ms. Gill presented absolutely no evidence showing her failure to appear was due to circumstances beyond her control or contrivance. Thus, I do not believe the trial court abused its discretion in proceeding with the custody hearing in Ms. Gill's absence. In her motion for new trial, Ms. Gill argued a continuance should have been granted in view of her medical condition, which would have allowed her an opportunity to present evidence supporting her allegations of abuse by Mr. McWhorter. However, having concluded the trial court did not err in refusing to continue the custody hearing, I likewise do not believe the trial court erred in denying Ms. Gill's motion for new trial, which was based largely on the denial of the requested continuance. Accordingly, I respectfully dissent.

2